UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARI BRISKMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 25=cv-7326 |
| | ) |
| LAKE COUNTY; LAKE COUNTY | ) JURY TRIAL DEMANDED |
| SHERIFF JOHN D. IDLEBURG, in his | ) |
| individual capacity; LAKE COUNTY | ) |
| STATE'S ATTORNEY ERIC RINEHART | ) |
| in his Individual capacity; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Ari Briskman, by his attorneys, Keith L. Hunt and Delaney A. Hunt of Hunt Law, P.C., complains against Defendants Lake County, Sheriff John D. Idleburg, individually, and Lake County States' Attorney Eric Rinehart, individually, as follows:

### I.
### NATURE OF THE ACTION

1. Plaintiff brings this case under 42 U.S.C. § 1983 (First Amendment Retaliation) for violating Plaintiff's First Amendment Rights of free speech and association.

### The Parties

2. The Plaintiff, Ari Briskman, resides in Lake County, Illinois, within this judicial district.

3. The Defendant, Lake County, is an Illinois local governmental entity located within this judicial district.

4. The Defendant John D. Idleburg is the Lake County Sheriff and is sued in his individual capacity.

5. Defendant Idleburg resides in Lake County, Illinois within this judicial district.

6. Defendant Eric Rinehart is the Lake County State's Attorney and is sued in his individual capacity.

7. Defendant Rinehart resides in Lake County, Illinois within this judicial district.

## Jurisdiction & Venue

8. This Court has jurisdiction over the parties and the subject matter.

9. This Court has federal subject matter jurisdiction over the Plaintiff's federal law constitutional law claims (§1983) pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this court under 28 U.S.C § 1391(b)(2) as the unlawful employment practices and conduct described in this Complaint were committed in this judicial district.

## FACTS

11. At all relevant times, the Plaintiff was a sheriff's deputy working for the Lake County Sheriff holding the rank of Sergeant.

12. Plaintiff was assigned to, and was in charge of, the Lake County Sheriff's Marine Unit, as well as being detailed to perform a number of other specialized duties and responsibilities.

13. At all relevant times, Plaintiff performed all of his job duties admirably and met all of his employer's reasonable expectations.

## IDLEBURG'S HISTORY OF POLITICAL RETALIATION

14. In 2022, Defendant Idleburg ran for re-election for the office of Lake County Sheriff.

15. Idleburg ran as a Democrat.

16. In the 2022 campaign, Idleburg's opponent was a Republican, Mark Vice.

17. Mark Vice was a Sheriff's Deputy in Lake County working for the Lake County Sheriff's Office ("LCSO") when he ran against his boss, Defendant John Idleburg in the 2022 election campaign.

18. During the course of the 2022 campaign, Vice used several photos in his campaign literature, including photos of:

    a. Vice in his Honor Guard uniform;
    b. Vice's campaign vehicle parked next to a Lake County Sheriff's squad car;
    c. Vice in his LCSO uniform at the Lake County Fair with a group of children near a LCSO fair exhibit;
    d. Vice in his LCSO uniform with a Special Olympics participant.

(Ex. A).

19. In response to one or more versions of Vice's political campaign literature, Sheriff Idleburg issued an August 15, 2022 Personnel Order to Deputy Vice alleging that Vice attached political campaign signs to a Sheriff's squad car.

3

20. In the August 15, 2022 Personnel Order, Idleburg threatened Vice with a criminal prosecution and disciplinary action. (Ex. B).

21. In the August 15, 2022 Personnel Order, Idleburg alleged that Vice had engaged in "Prohibited Political Activities" as defined under the State Officials and Employees Ethics Act (Ethics Code).(Ex. B).

22. The State Officials and Employees Ethics Act does not apply to sheriff's deputies.

23. Sheriff's deputies are not state employees.

24. Thereafter, on September 19, 2022, Idleburg issued a second Personnel Order to Vice.(Ex. C).

25. In the September 19, 2022 Personnel Action, Idleburg ordered Vice to remove photographs depicting Vice in his uniform from all campaign literature, social media sites and related political party websites. (Ex. C).

26. Defendant Idleburg claimed that Vice's use of such photos violated various policies of the LCSO. (Ex. C).

27. That same day, Idleburg requested that the Lake County State's Attorney Eric Rinehart charge Vice criminally with a misdemeanor. (Ex. D).

28. Idleburg acted under color of law when he issued the Personnel Action forms to Vice and when he referred the matter for criminal prosecution to Rinehart.

29. States' Attorney Eric Rinehart referred the matter to the then-McHenry County State's Attorney, Patrick Kenneally, "in light of [Rinehart's] conflict and political connection to Sheriff Idleburg." (Ex. D).

30. Rinehart knew, or with even a cursory review of the relevant statutes, should have known, that there was no criminal charge that could be brought against Vice because the Ethics Code applies only to state employees.

31. Nevertheless, even after discussing the allegations with State's Attorney Kenneally, Rinehart, formally referred the allegations to the McHenry County State's Attorney's Office for investigation. (Ex. D).

32. Rinehart acted under color of law when he referred the investigation to the McHenry County State's Attorney.

33. After a cursory review, the McHenry County States' Attorney opined that Idleburg's complaint was a "quick no charge." (Ex. D).

34. Shortly thereafter, on October 3, 2022, the McHenry County State's Attorneys Office issued a formal opinion to Rinehart declining to prosecute Vice. (Ex. E ).

35. In the October 3, 2022 Opinion Letter, the McHenry County State's Attorney concluded there was absolutely no factual or legal basis to charge Vice with any crime. (Ex. E).

36. In the October 3, 2022 Opinion Letter, the McHenry County State's Attorney's Office opined:

    a. The Lake County Ethics Code does not apply because it clearly states that:

> "elected officials and employees working in the offices of the 19th Judicial Circuit Court, Circuit Court Clerk, Coroner, County Clerk, Health Department, Recorder of Deeds, Regional Office of Education, Sheriff, State's Attorney, and Treasurer are not subject to the penalties of the Ethics & Conduct Code";

    b. There was no evidence of a campaign sign affixed to the squad car as alleged;

    c. There was no evidence that Vice drove the campaign vehicle to be photographed next to a LCSO squad;

    d. There was nothing improper about wearing a Sheriff's uniform in a photo being used for a political purpose stating:

> Assuming that the uniforms and badges affixed to the uniform are county property, the question becomes are they intentionally using that property to campaign or are they simply being photographed during "compensated time" doing county authorized activities and then using that photo to campaign. It would appear from the photos with the Special Olympian and/or the children at the Lake County Fair that Mr. Vice was engaged in authorized activity and was photographed while doing so. It is further apparent that either by design or based on proximity to the photographer, the badges are not legible as Lake County Sheriff's Office property. Without proof that Mark Vice specifically donned his uniform with the intent to stage it for a photograph and not simply to go to work, and given that the badges themselves are not legible, there appears to be no basis for a violation.

(Ex. E).

    37. The McHenry County Ste's Attorneys Opinion letter concluded, in relevant part:

> In short, the Lake County Ethics and Conduct Code specifically exempts many county employees, including Sheriff's employees, from the criminal punishments noted therein. Had the ordinance not specifically exempted these employees from criminal punishments pursuant to the Ethics Code, the facts presented fall short of establishing intentionally performing political activity on compensated time or intentionally using county property or resources to campaign.

(Ex. E).

6

38. In reality, several of the photos Vice used in his campaign had been taken by Sheriff's office employees and had been posted on the Sheriff's website and/or Facebook page.

39. There was no good faith plausible basis for Idleburg to request criminal charges.

40. There was no good faith plausible basis for Rinehart to refer the Vice matter to the McHenry County State's Attorney's office for criminal investigation prosecution.

41. Idleburg and Rinehart took these actions for political purposes, thereby abusing the power and authority of their respective offices.

42. Defendant Idleburg and Eric Rinehart, took these actions in an effort to chill Vice's political free speech as an individual running for public office.

43. Defendant Idleburg and Eric Rinehart took these actions in an effort to interfere with Vice's First Amendment right of free speech.

44. Defendant Idleburg and Rinehart took these actions to deter like-minded citizens from supporting Vice in his effort to unseat Idleburg.

45. Hypocritically, Defendant Idleburg himself has:

    a. Posted or caused to be posted on his Facebook page images of himself and other deputies in uniform;

    b. Posed for photos with uniformed deputies and posted the images on his Facebook to support his own campaign, candidacy and reelection efforts; and

      c. Has engaged in the very same behavior for which he sought criminal charges against Vice, including using photos of a squad, which previously Idleburg claimed violated the Illinois Ethics Code.

(Ex. F)

46. Rinehart has also posted, or caused to be posted, on his Facebook page pictures of Lake County Sheriff's deputies in uniform.

## THE 2024 STATE'S ATTORNEY CAMPAIGN

47. Undeterred by the McHenry County State's Attorney's 2022 Opinion letter, Defendant Idleburg and Rinehart engaged in a similar tactic in the 2024 States' Attorney's race.

48. During 2024, Eric Rinehart was the Democratic Candidate running for re-election to the office of Lake County State's Attorney.

49. In the 2024 election, Mary Cole was the Republican Candidate running for State's Attorney in Lake County.

50. During the 2024 campaign season, while on duty and in his uniform, Plaintiff visited Mary Cole's law office in Gurnee, Illinois to return certain evidence from a criminal case in which Ms. Cole had represented the defendant.

51. While outside of Ms. Cole's office on September 4, 2024, a photo of the Plaintiff was taken while he was speaking with Ms. Cole (Fig. 1 below).

52. Plaintiff appeared at Cole's office as part of his official duties as a deputy.

53. Plaintiff did not visit Cole's office for the purpose of appearing in a campaign photo or to have his photograph taken.

54. One of Ms. Cole's campaign workers asked if Cole's campaign could use the photo in a political advertisement.

55. Plaintiff indicated that the photo could be used, but only if his face was not shown and the photo was altered to remove any reference to Lake County.

56. The following is a true and accurate copy of the photograph taken outside Cole's office as it was used in Cole's campaign:



*Fig. 1*

57. In the photo, as used by Cole in her campaign, Plaintiff's face is not shown.

58. In the photo, as used by Cole in her campaign, a portion of the sleeve patch is blurred out so that a person viewing the image cannot see that Plaintiff worked for the Lake County.

59. As a private citizen, Plaintiff politically supported Ms. Cole in her effort to become elected as Lake County State's Attorney.

60. Plaintiff opposed Rinehart's candidacy for re-election as State's Attorney.

61. Plaintiff had a First Amendment right to support and/or oppose candidates of his choosing based on his personal beliefs.

### IDLEBURG AND RINEHART ARE CLOSE POLITICAL ALLIES

62. Rinehart and Defendant Idleburg worked closely together in their respective election campaigns, making many public appearances together.

63. Rinehart campaigned for Idleburg in the 2022 Sheriff's election.

64. Idleburg campaigned for Rinehart in the 2024 State's Attorney election.

65. Rinehart supports Idleburg politically.

66. Idleburg supports Rinehart politically.

67. Both Idleburg and Rinehart are Democrats and are actively involved in the Lake County Democratic organization.

68. After the photo depicting Cole and Plaintiff appeared in a Cole campaign ad, someone in Rinehart's campaign saw the photo and inquired to Idleburg which deputy had appeared in the photo.

### THE INVESTIGATION

69. On September 25, 2024, Margaret Carrasco, a Waukegan activist with ties to the Waukegan Democratic organization, allegedly filed a complaint with the Lake County State's Attorney Eric Rinehart alleging an ethics violation.

70. A copy of the alleged complaint was also sent to the Idleburg.

71. On information and belief, Carrasco filed the complaint at the request of either Rinehart, Idleburg or member(s) of their respective organizations.

72. Carrasco, a Democrat, considers herself a community activist and has run unsuccessfully for various public offices including the Waukegan District 60 School Board

10

and Waukegan Alderman (3d Ward), has filed lawsuits challenging various ordinances and has filed numerous objector's petitions seeking to invalidate nominating petitions filed on behalf of candidates running for public office in Waukegan.

73. On information and belief, Carrasco was previously sued by the Illinois Attorney General for impersonating an attorney and "cheat[ing] immigrants out of their upfront payments and putting them at risk for deportation" according to a Chicago Reporter news article (https://www.chicagoreporter.com/broken-promises/); *see also People v. Carrasco*, 11CH4621 (Lake County Illinois).

74. The Lake County News Sun called Carrasco a "political gadfly" after filing to run for Waukegan Mayor in 2001.

75. Based on this "complaint", Undersheriff Lawrence Oliver acting at Idleburg's behest, ordered that the Office of Professional Standards begin an investigation against Briskman.

76. Idleburg then sent two deputies to Cole's law office to interrogate her about the circumstances under which the photo was taken.

77. Idleburg's deputies demanded documents, emails, photos and other information from Cole.

78. Idleburg began investigating the Cole campaign and Plaintiff's image in the photo.

79. Idleburg's deputies appeared at Cole's office unannounced on more than one occasion demanding records and information while presenting themselves as being part of an official law enforcement investigation.

11

80. Idleburg also launched an investigation against Plaintiff alleging that he violated rules and policies by allowing a photo of himself to be used in Cole's political advertisements.

81. Idleburg abused his official authority as Sheriff and as Plaintiff's employer to act under color of law.

82. Idleburg's purpose in launching the investigation was to chill Plaintiff's speech and association, to stifle Plaintiff's support of Cole's campaign as a private citizen and to deter other deputies, sheriff's employees and Cole supporters from supporting Cole's candidacy for State's Attorney.

83. Idleburg abused his official powers as Sheriff and used those powers to bolster and support Rinehart's campaign.

84. Idleburg demoted Plaintiff from the rank of Sergeant to the rank of Deputy and stripped Plaintiff of most of the special duties he had been performing.

85. On information and belief, Idleburg discussed Plaintiff's conduct with Rinehart before demoting Plaintiff.

86. Rinehart and Idleburg both knew, based on their knowledge of the law and their having previously received the 2022 opinion from the McHenry County State's Attorney, that there was nothing improper in Plaintiff's conduct.

87. Idleburg launched the investigation into Plaintiff's conduct and Cole's campaign activities with the express intent of:

    a. Chilling Plaintiff's free speech;

    b. Interfering with Plaintiff's First Amendment rights of free speech and association;

    c. Intimidating Cole and her campaign; and

    d. Deterring Briskman and other sheriff's deputies and/or like-minded Cole supporters from supporting or participating in Cole's campaign.

88. On information and belief, Rinehart, or others from his office, consulted and consorted with Idleburg, or members of his team, regarding the investigation of Plaintiff and the discipline he was to receive.

89. Rinehart and Idleburg perceived that Plaintiff was opposing Rinehart's candidacy and/or was supporting Cole.

90. Rinehart is a final policymaker in the Lake County State's Attorney's office.

91. Idleburg is a final policymaker in the Lake County Sheriff's Office and its employees.

92. Lake County is responsible for Idleburg's acts, errors and omissions since Idleburg is a final policymaker.

93. Lake County is responsible for Rinehart's acts, errors and omissions since Rinehart is a final policy maker.

94. Idleburg demoted Plaintiff from the rank of Sergeant to the rank of Deputy Sheriff on November 6, 2024, the day after the November 5, 2024 General Election in which Rinehart was re-elected..

**COUNT I**
**42 U.S.C. § 1983 – First Amendment Retaliation**
**(Against Idleburg)**

95. Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 94 as and for this paragraph.

96. As a private citizen, Plaintiff enjoyed a First Amendment right of free speech and association.

97. Plaintiff supported Cole's candidacy.

98. Plaintiff, along with a large number of other individuals employed in law enforcement in Lake County and elsewhere, opposed Rinehart's candidacy because Rinehart was soft on crime and because he was an outspoken supporter of the Safe-T Act.

99. Rinehart was one of only two State's Attorneys in the entire state of Illinois to support the passage of the Safe-T Act, the other being the highly controversial former Cook County State's Attorney (Kim Foxx).

100. The Safe-T Act, and Rinehart's role in supporting it, was a major issue in the 2024 Lake County State's Attorney race.

101. In retaliation for Plaintiff's support of Cole's candidacy and Cole's of Plaintiff's photo, Figure 1 above, and thereby violating Plaintiff's First Amendment rights of free speech and association, Idleburg:

    a. Launched an investigation into Plaintiff allegedly having engaged in many of the same actions that Idleburg himself engaged in;

    b. Demoted Plaintiff from the rank of Sergeant to the rank of Deputy;

    c. Caused Plaintiff to suffer a substantial reduction in pay;

102. Idleburg violated Plaintiff's First Amendment rights.

103. Idleburg acted intentionally.

104. Idleburg acted under color of law.

105. Idleburg knew his actions were unlawful but proceeded anyway with a conscious disregard for Plaintiff's constitutional rights.

106. Idleburg caused Plaintiff to suffer a constitutional injury.

107. Idleburg caused Plaintiff to suffer damages in the form of a reduction in rank duties and responsibilities; injury to his career path; a reduction in pay; and to suffer anxiety, humiliation and emotional distress.

### COUNT II
### 42 U.S.C. § 1983
### Conspiracy
### (Against All Defendants)

108. Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 107 as and for this paragraph.

109. Idleburg and Rinehart conspired to deprive Plaintiff of his constitutional rights.

110. Idleburg and Rinehart are both Democrats.

111. Idleburg and Rinehart worked together in support of Rinehart's campaign.

112. On information and belief, Idleburg and/or Rinehart coordinated efforts to have Carrasco make a complaint about Plaintiff's photo appearing in Cole's campaign ads.

113. On information and belief, Idleburg and Rinehart discussed Plaintiff's conduct and together agreed that Idleburg would launch an investigation into Cole's campaign and Plaintiff's photo, in an effort to thwart Cole's campaign and to boost Rinehart's campaign.

114. Acting together, Rinehart and Idleburg, and/or others acting on their behalf with their full knowledge and authorization, orchestrated the investigation and disciplinary action taken against Plaintiff.

115. Acting together, Idleburg and Rinehart conspired to interfere with Plaintiff's constitutional rights.

116. Idleburg and Rinehart knew their conduct was wrong given the 2022 McHenry County State's Attorney letter.

117. Both Idleburg and Rinehart, as part of their respective political campaigns, and/or for political purposes, have posted pictures of themselves taken with uniformed Sheriff's deputies. (Exs. F & G)

118. Idleburg, or individuals acting at his direction, consulted with either Rinehart or one or more of his subordinates within the LCSAO regarding the action that should be taken against Plaintiff.

119. Given Idleburg's and Rinehart's past usage of photos of uniformed Lake County sheriff deputies in their own respective Facebook and other political posts and ads, the investigation and discipline was a misuse of their statutory authority and/or was undertaken for their own political gain.

120. Idleburg and Rinehart acted intentionally.

121. Idleburg and Rinehart acted under color of law.

122. In furtherance of their agreement to interfere with Plaintiff's constitutional rights, Idleburg:

    a. Launched an investigation into Cole's campaign to benefit Rinehart;

    b. Launched an investigation into Plaintiff;

    c. Demoted Plaintiff.

123. After Plaintiff was demoted, Plaintiff filed a grievance with his union contesting the demotion.

124. The union's grievance is proceeding to arbitration.

125. Rinehart, acting individually and in his capacity as State's Attorney, and in an effort to support his close friend, political ally and fellow Democrat, John Idleburg, caused his office to represent the Sheriff's Office in the arbitration of plaintiff's grievance.

126. Rinehart and his office are representing Idleburg in the arbitration.

127. As a direct and proximate result of Defendants' conduct, Plaintiff was damaged.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and award Plaintiff:

A. Back pay, including all lost past wages and benefits;

B. Compensatory damages;

C. Punitive Damages against the Idleburg and Rinehart only;

D. Prejudgment interest;

E. Reinstate Plaintiff to the rank of Sergeant, together with all rights and benefits commensurate therewith and to restore his seniority;

F. Reasonable costs and attorneys' fees under all applicable statutes, including but not limited to 42 U.S.C. § 1988;

G. Permanently enjoin Defendants, and all those persons acting in concert or participation with them, from discriminating against and harassing Plaintiff,

interfering with his First Amendment rights and award other appropriate injunctive relief;

H. Award Plaintiff all other relief as this Court deems appropriate, equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                              Respectfully submitted,
                              HUNT LAW, P.C.

                              *Keith L. Hunt (electronic signature)*
                              An Attorney for Plaintiff

Keith L. Hunt
Delaney A. Hunt
HUNT LAW, P.C.
2275 Half Day Road Suite 126
Bannockburn, IL 60015
P: (312) 558-1300
khunt@huntpclaw.com
dhunt@huntpclaw.com