**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ARI BRISKMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **25cv7326** |
| | ) | |
| **LAKE COUNTY; LAKE COUNTY SHERIFF** | ) | **Honorable Martha M. Pacold** |
| **JOHN D. IDLEBURG, in his individual capacity;** | ) | |
| **LAKE COUNTY STATE'S ATTORNEY ERIC** | ) | |
| **RINEHART in his individual capacity;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT**
<u>**PURSUANT TO RULE 12(b)(6)**</u>

Plaintiff voluntarily appeared in a political ad while in his sheriff's uniform:



*Fig. 1*

He was then disciplined under employment rules prohibiting political activity while in uniform. Plaintiff now alleges he was disciplined for exercising his First Amendment rights. Yet his pleadings, taken in a light most favorable, compel dismissal with prejudice.

Plaintiff was speaking as a law enforcement officer, not a private citizen. The Lake County Sheriff controls a law enforcement agency that enforces the law fairly, even-handedly, and without bias. Plaintiff highjacked and compromised the public's perception of the agency by publicly

1

choosing a side. His speech is therefore governmental and regulable without constitutional injury. Even if plaintiff could establish a constitutional injury, the Sheriff is entitled to qualified immunity for his discretionary employment decisions when plaintiff has not suffered a clear First Amendment injury. Absent a constitutional injury, there is no conspiracy. Plaintiff's complaint should be dismissed *with prejudice*.

## ALLEGATIONS REGARDING BRISKMAN

On September 4, 2024, Sergeant Ari Briskman "visited Mary Cole's law office in Gurnee, Illinois to return certain evidence from a criminal case in which Ms. Cole had represented defendant." (Dkt. #23 at ¶52). While there and in uniform, he was photographed with Cole and later consented to have that photograph used in political advertisements. (*Id.* at ¶¶54-55, 66-69). The photo shows plaintiff in profile, in uniform, with the word "Sheriff" appearing on his left shoulder. (*Id.* at ¶70, Fig. 1). Plaintiff alleges he was not aware the photo was taken until afterwards. (*Id.* at ¶61) Plaintiff asserts that "At the time…he was not acting in an official capacity" and "was not conducting any official business." (*Id.* at ¶56). Following an investigation by the Office of Professional Standards, the Sheriff demoted plaintiff. (*Id.* at ¶¶ 89). The demotion was based upon the finding that plaintiff "violated rules and policies." (*Id.*). Plaintiff filed a grievance over the demotion and the findings that he violated LCSO rules; that grievance is subject to a pending arbitration. (*Id.* at ¶¶109-110).

Plaintiff alleges that the Sheriff and State's Attorney engaged in a conspiracy to investigate the photograph. According to the complaint, "in furtherance of [an] agreement to interfere with Plaintiff's constitutional rights" Sheriff Idleburg launched an investigation into the Plaintiff and demoted him. (*Id.* at ¶161). State's Attorney Rinehart participated in the conspiracy by "caus[ing] his office to represent the Sheriff's Office in the arbitration of plaintiff's grievance." (*Id.* at ¶62)

## ALLEGATIONS REGARDING DEPUTY VICE

The Complaint also contains several allegations about Sheriff Idleburg's management of another employee, Deputy Mark Vice. (Dkt. #23, at ¶¶ 15-48). Vice had appeared in campaign ads in his uniform. (*Id.* at ¶17-18). According to the Complaint, Sheriff Idleburg requested a legal analysis from State's Attorney Rinehart as to whether Vice violated any criminal laws. (*Id.* at ¶32, Ex. D) To avoid any appearance of conflict, State's Attorney Rinehart referred the question to a State's Attorney from a nearby county. (*Id.*) The McHenry County State's attorney opined that there was no viable criminal charge for Vice's actions, specifically because he was not subject to the Lake County Ethics Code. (*Id.* at ¶¶ 37-38). Vice was not criminally charged. The Sheriff's Office sent a letter to Vice warning him that he had violated Merit Commission rules and requesting that he have the offending photographs removed. (*Id.* at ¶¶25-27). Vice is not a party to this lawsuit.

## STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of a complaint and tests whether the complaint states a claim upon which relief can be granted. *Richards v. Mitchell* 696 F.3d 635, 637 (7th Cir. 2012). To survive such a motion, the complaint must provide each defendant with fair notice of a claim's basis. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim against each Defendant must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Qualified immunity is a proper basis for dismissal under Rule 12(b)(6), so long as the application of the immunity does not require fact-finding. *See Hanson v. LeVan*, 967 F.3d 584,

3

590 (7th Cir. 2020) (addressing qualified immunity). If plaintiff's pleading establishes a lack of

an essential element of his claim, dismissal under 12(b)(6) is appropriate. *Jefferson v. Ambroz*,

90 F.3d 1291, 1296 (7th Cir. 1996) (citing *Thomas v. Farley,* 31 F.3d 557, 558–559 (7th

Cir.1994) ("[I]f a plaintiff chooses to plead the particulars and they show he has no claim, then

he is out of luck—he has pleaded himself out of court").

## ARGUMENT

### I.     Count I, First Amendment Retaliation Claims, Should be Dismissed

To make out a *prima facie* claim for a violation of First Amendment rights, a public

employee "must present evidence that (1) his speech was constitutionally protected; (2) he suffered

a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the

employer's actions." *Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017) (citations

omitted). *Warner v. Brown*, 670 F. App'x 420, 423 (7th Cir. 2016) (plaintiff must plead a

constitutional injury to state a claim under § 1983). Plaintiff's speech, while representing himself

as a sheriff's deputy, is not constitutionally protected.

### A.   Plaintiff Has Not Pled a Constitutional Injury

Plaintiff participated in a political campaign advertisement while in his Sheriff's Office

uniform. (*See* Dkt. #23, ¶¶ 66-70).  The LCSO found that this activity violated its internal rules

and procedures.  *See* Ex. A, Personnel Order P24-289. The Court can consider this document under

Rule 10(c) because plaintiff incorporates the document by reference in his complaint. (Dkt. #23,

at ¶¶89, 93)[1] Specifically, plaintiff was found to have violated Rule 2.5 "Misuse of

---

[1] Pursuant to FRCP 10(c), documents attached to a Motion to Dismiss may be considered by the court. *Rosenblum v. Travelbyus.com Ltd.*, 299 F. 3d 657, 661 (7th Cir. 2002). ("'[D]ocuments [under FRCP 10(c)] attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss."); *Burke v. 401 N. Wabash Venture, LLC*, 714 F. 3d 501 at *3 (2013) (recognizing that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim; these

Position"(prohibiting members from "using their status as a member of the Sheriff's Office or their identification card or badges for personal gain or influence") and Rule 1.1.07 ("Although employees are not restricted for certain activities as private citizens, employees must not officially represent the LCSO or identify themselves in any way that could reasonably be perceived as officially representing the LCSO, without express authorization of the Sheriff…includ[ing]…endorsing, supporting, or contradicting any political campaign or social issue.") (Ex. A).

This is not private speech as a citizen but rather official speech as a public employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballoa*, 547 U.S. 410, 421 (2006); *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 648 (7th Cir. 2006) (granting summary judgment on Sergeant's First Amendment retaliation claim when she spoke "on duty" and "in uniform" and not as a private citizen). Plaintiff does not have the First Amendment right to engage in political activity while representing the Sheriff's Office. *Coady v. Steil*, 187 F.3d 727, 732 (7th Cir. 1999) ("[I]f the plaintiff engaged in political activity while on-duty, his First Amendment claim would surely lose."). *Cf. United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75 (1947) (upholding the Hatch Act which restricts many political activities of federal employees); *see also Broadrick v. Oklahoma*, 413 U.S. 601 (1973) (upholding Oklahoma's "mini-Hatch Act" which imposed similar restrictions on state civil servants).

If plaintiff had been off-duty and out of uniform, he was free to endorse whatever political candidates he chose. *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004) ("[W]hen government

---

documents may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment).

employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment protection"). Plaintiff admits that he was at Mary Cole's office to conduct official Lake County Sheriff's Office business and in his uniform when he posed for a political ad – in direct violation of his employment rules. Plaintiff's attempt to disguise his face and shoulder patch does not protect him. By plaintiff's own allegations, members of the public and employees of the Sheriff's Office could identify him and his uniform. (Dkt. #23, at ¶¶ 66-70, 71). The photo, (*id.* at ¶70, Fig. 1), clearly shows the word "Sheriff" on a law enforcement uniform. The political ad was for a candidate for Lake County office. There is only one Sheriff in Lake County. The clear purpose of the ad was to convey the message that an on-duty public official from the Lake County Sheriff's Office supported the political campaign. Accordingly, plaintiff's speech is unprotected as a threshold matter and dismissal of the pleadings *with prejudice* is warranted.

### B. Plaintiff's Attempt to Plead Contradictory Facts is Unavailing

Plaintiff asserts a new alternative factual theory that is impermissible under the Federal Rules. In his initial complaint, plaintiff asserts he was "on duty" when he made his First Amendment expression supporting candidate Cole. (Dkt. # 1 at ¶52 "Plaintiff appeared at Cole's office as part of his official duties as a deputy."). Now that defendants have pointed out how such an admission is legally damaging to his case (Dkt. #10, MTD), plaintiff has decided to proffer contradictory theories of whether or not he was "on duty" at the time. (*Compare* Dkt. #23 at ¶56 "At the time plaintiff's photo was taken he was not acting in an official capacity." with ¶¶62-65 (alleging that plaintiff *was* on duty at the time the photo was taken and the Safety Act "prevented him from preventing his photo from being taken."). Fed. R. Civ. P. 11, however, prohibits a party from pleading facts it knows to be false. Accordingly, a "pleader may assert contradictory

6

statements of fact only when legitimately in doubt about the facts in question." *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996). Plaintiffs are allowed to allege alternative factual theories, but only if that information is outside their knowledge at the pleading stage. Plaintiff – a law enforcement deputy charged with carrying out important duties – surely knows his duty status at a given moment. *See Gardner v. City of Waukegan*, 1999 WL 410009 *8 n. 3 (rejecting contradictory pleadings where facts at issue were uniquely within plaintiff's knowledge).

Plaintiff should not be allowed to further this fiction with the Court. Plaintiff attaches one-page of transcript out of his arbitration proceeding (Dkt. #23, ¶112, Ex. H.)– thereby incorporating the arbitration transcript into his complaint. Fed. R. Civ. Pro. 10(c); *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 n.4 (7th Cir. 2003) (approving consideration of contract attached to motion to dismiss where plaintiff referenced it in the complaint). Defendants hereby attach the full transcript which shows: (a) his legal representative conceding that plaintiff was "on duty" while photographed; and (b) plaintiff's transcribed admission that he was "on duty" when photographed. *See* Ex. B, Transcript of Arbitration Proceedings at 11:4-9 ("There isn't any question that the photo was taken while he was on-duty.") and 35:2-37:5 (referring to transcribed statement where plaintiff admitted he was on-duty).

Even if the Court did credit plaintiff's contradictory facts regarding his on-duty status – it is unavailing from the constitutional analysis. Government employees do not have constitutional rights to speak on behalf of their office, even if they are off-duty. *Lalowski*, 789 F.3d at 793 (police officer diminished his speech interests when he represented himself as an off-duty police officer), *Hicks v. Illinois Department of Corrections*, 109 F.4th 895, 904 (7th Cir. 2024) (social media posts

next to photos of plaintiff in uniform "created the risk" that someone would associate plaintiff's speech with his employer).

### C.  Plaintiff Fails *Pickering* Balancing Test

As noted above, Plaintiff's speech as a public employee is not private speech of a citizen. Nevertheless, if the Court decides that Plaintiff's speech is private, the *Pickering* balancing test would apply. *See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 564 (1968)).  Courts generally discourage having to apply the balancing test to the speech of a public employee.  *See City of San Diego, Cal.*, 543 U.S. at 82 ("To require *Pickering* balancing in every case where speech by a public employee is at issue, no matter the content of the speech, could compromise the proper functioning of government offices."); *Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter").  However, even if the Court were to apply that test, plaintiff's claims fail.

The *Pickering* test can be resolved on the pleadings, "where a plaintiff chooses to plead particulars, and those particulars 'show that he has no claim, then he is out of luck—he has pleaded himself out of court." *Chi. Sch. Reform Bd. of Trs.,* 79 F.Supp.2d at 935 (quoting *Thomas v. Farley,* 31 F.3d 557, 558 (7th Cir.1994). *Medici v. City of Chicago*, 144 F. Supp. 3d 984, 989 (N.D. Ill. 2015) (dismissing Chicago Police officer's First Amendment retaliation claim on the pleadings after a *Pickering* analysis "without the necessity of discovery").

The *Pickering* factors to consider are:

1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; 2) whether the employment relationship is one in which personal loyalty and confidence are necessary; 3) whether the speech impeded the employee's ability to perform daily ... responsibilities; 4) the time, place and manner of the speech; 5) the context in which the underlying dispute arose; 6) whether the matter was one on which debate was vital to informed decision making; and 7) whether the speaker should be regarded as a member of the general public.

*Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1502 (7th Cir.1994); *Lalowski v. City of Des Plaines*, 789 F.3d 784, 791 (7th Cir. 2015) (weighing factors against Des Plaines police officer in First Amendment Retaliation case).

First, plaintiff's conduct creates problems in maintaining discipline and harmony throughout the Sheriff's Office. Law enforcement agencies have a "more significant" interest than typical government employers in regulating the speech of its employees "to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence." *Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999). They are given "more latitude in their decisions," which are "entitled to considerable deference" because "police departments function as paramilitary organizations charged with maintaining public safety and order." (*Id*. at 845–46). Plaintiff's conduct as plead was disruptive and therefore the Sheriff's reasonable response to such potential disruption can be of no constitutional concern.

Second, the employment relationship at issue is one that requires personal loyalty and confidence among the rank and file, and the public. *Breuer v. Hart*, 909 F.2d 1035, 1041 (7th Cir. 1990) ("[S]peech that might not interfere with work in an environment less dependent on order, discipline, and *esprit de corps* could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations."). Accordingly, the second factor weighs in favor of the Sheriff.

Third, plaintiff's conduct can easily be viewed as impeding his ability to perform law enforcement duties and responsibilities because while "on duty and in his uniform" he was posing for a political campaign advertisement instead of protecting the public. There was no official purpose in posing for political photos; the fact that plaintiff was at least partially self-aware enough

to ask the campaign to mask his identity (Dkt. #23, at ¶69), is a tacit admission that he was neglecting his employment responsibilities.

Fourth, the "time, place, and manner of the speech," namely "in uniform" and at "Mary Cole's law office in Gurnee" is a far cry from ardent public political advocacy, say, at a rally or protest. Accordingly, the time, place and manner of plaintiff's conduct is not reasonable and weighs in favor of the Sheriff. *See Greer v. Amesqua*, 212 F.3d 358, 371–72 (7th Cir. 2000) ("manner and means of the employee's protestation are key considerations in balancing the employer's and employee's interests under *Pickering"*); *see also Kokkinis,* 185 F.3d at 842, 846 (police officer's criticism of police chief on local news broadcast weighed against police officer)

The fifth factor, "the context within which the underlying dispute arose" favors the Sheriff. The behavior was in direct contradiction to LCSO rules. *Lalowski*, 789 F.3d at 792 (noting that police department had interest in enforcing disciplinary rules.) And the sixth factor, "whether the matter was one on which debate was vital to informed decision-making"—also favors the Sheriff because there was no debate—plaintiff did not engage in one. He did not use his words to convey political position or thought, he used his employer's symbol to communicate advocacy for a political candidate. These factors weigh in favor of the Sheriff.

Seventh, and finally, plaintiff cannot be regarded as a member of the general public because he was wearing his sheriff's uniform and making a statement as a sheriff's deputy. *Lalowski*, 789 F.3d at 793 (police officer diminished his speech interests when he represented himself as an off-duty police officer), *Hicks*, 109 F.4th at 904 (7th Cir. 2024) (use of police uniform on social media posts could be regulated by employer).

In sum, the Court need not undertake *Pickering* balancing but if it does, plaintiff pleads all the particulars to show how the Sheriff's demotion decision should be considered a reasonable response to a Sergeant's disruptive uniformed political activity.

### D. The Sheriff Has Qualified Immunity for Employment Decisions

The Supreme Court has written that qualified immunity balances two important interests: first, "the need to hold public officials accountable when they exercise power irresponsibly"; second, "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Complaint here implicates both elements of the qualified immunity analysis. To wit: (1) whether the Complaint's allegations plausibly articulate a fact pattern in which a constitutional right was violated; (2) whether such a right was clearly established, as compared to the state of the law at that time. *Pearson*, 555 U.S. at 232.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). *See also Harlow v. Fitzgerald*, 451 U.S. 800, 818 ("For executive offices in general…qualified immunity represents the norm."). An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). Framed slightly differently, the Supreme Court asks whether existing precedent has placed the constitutional question "beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

There is no established precedent that bestows plaintiff with a First Amendment right to appear in political advertisements while representing the sheriff's office in uniform. Quite the

opposite. *Lalowski*, 789 F.3d at 793 (governmental interest in running efficient police department allowed regulation of plaintiff's off-duty statements). As such, Defendants are entitled to qualified immunity. *See Chaklos v. Stevens*, 560 F.3d 705, 716 (7th Cir. 2009) (concluding that defendants were entitled to qualified immunity in First Amendment retaliation claim where plaintiff's "entitlement to First Amendment protection [was] not obvious."); *Nesvold v. Roland,* 37 F. Supp. 3d 1027, 1041 (W.D. Wis. 2014) (granting qualified immunity where it was not clearly established that plaintiff had a right to speak to Board of Supervisors in direct contravention of Sheriff-employer's directive).

### E. Allegations Regarding Mark Vice are Irrelevant

As Plaintiff's spends more than half of his complaint addressing the potential discipline of Mark Vice, it is worth discussing why those allegations are irrelevant to this case. Here, Briskman violated internal Sheriff's Office rules. The McHenry County State's Attorney's issued a legal opinion that Deputy Vice was not subject to the Lake County Ethics Code – that opinion did not implicate the same LCSO rules that resulted in Briskman's discipline. (Dkt. #23 at ¶¶37-39.) Plaintiff tries to bootstrap that opinion to conclude that the Sheriff knew he couldn't discipline plaintiff. (*Id.* at ¶97.) But that legal opinion has nothing to do with the basis for the employment discipline meted out to plaintiff. Plaintiff tries to hide this inescapable fact; he attaches the disciplinary letters sent to non-party Vice, but fails to present the disciplinary letter sent to him (*See* Ex. A). Instead, he merely alludes to the Sheriff's investigation of "rules and policies." (Dkt. #23, at ¶89). Plaintiff possesses those disciplinary documents; these facts are known to him. Plaintiff's allegation that he was disciplined under the same rules as Vice (*Id.* at ¶97) was not made in good faith.

As noted above, the Court can consider the actual rules applied against Briskman as his complaint incorporates them by reference. Plaintiff was disciplined for violating rules against appearing in uniform in political ads, while on duty. The allegations related to Deputy Vice are irrelevant to Plaintiff's claims and do not establish any element of his claim.

## II.     Plaintiff's Conspiracy Claim, Count II, Fails

In Count II, plaintiff alleges that the Sheriff and State's Attorney conspired to take employment action against him. In addition to the fact that plaintiff has failed to allege a cognizable constitutional injury, he has failed to adequately plead a conspiracy claim.

### A.  Allegations of Conspiracy are Impermissibly Vague

Section § 1983 allows recovery for conspiracy to violate a clearly established right, not for the conspiracy itself. *Villareal v. Chicago Police Officers,* No. 88 C 8208, 1997 WL 242903, at *3 (N.D.Ill. May 5, 1997). In other words, it does not create or punish conspiracy *per se*, only when coupled with the actual denial of a civil right. *Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir.1982). Mere complaints about a plaintiff's speech are not sufficient allegation of conspiracy. *See Williams v. Seniff*, 341 F.3d 774, 785-786 (7th Cir. 2002) (plaintiff's evidence that various public officials expressed displeasure with his statements was not enough to support claim of a conspiracy to fire him.) Plaintiff concedes that he appeared in a political ad in uniform.  That was, in fact, in violation of the Sheriff's Office rules. Reporting true information and investigating true public facts cannot be the basis of a conspiracy.

Two conditions must be satisfied for a plaintiff to have a cause of action under § 1983: (1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970). Only the Sheriff can take

13

disciplinary actions against his employees. *Moy v. Cty of Cook*, 159 Ill. 2d 519. 526-27 (1994) (employees of Sheriff's department are solely under Sheriff's control). The State's Attorney has no authority to make employment or disciplinary decisions for plaintiff.  Plaintiff cannot establish that the State's Attorney deprived him of his employment status or that the State's Attorney acted under the color of any law, since he has no authority under the law to discipline him. Even if the Court were to accept plaintiff's vague allegations as true, at most they allege that the State's Attorney exercised his First Amendment rights by complaining to the Sheriff about plaintiff's uniformed on-duty political activity.

### B. Allegations Regarding the State's Attorney's Office's Representation of the Sheriff's Office in Arbitration Cannot form the Basis for Conspiracy

Plaintiff's other allegations hinting at conspiracy fall flat. Plaintiff's only non-conclusory allegation against the State's Attorney is that he "caused his office to represent the Sheriff's Office in the arbitration of plaintiff's grievance." (Dkt. #23 at ¶162). The fact that the State's Attorney's Office represents the Sheriff in grievance arbitrations is not an element of conspiracy – it is a statutory obligation required under Illinois Law. *See* 55 ILCS 5/3-9005 (a)(4) (duties of State's Attorney includes "To defend all actions and proceedings brought against the county, or against any county or State officer, in the county of State's officer's official capacity.") Plaintiff – through his union representative – initiated an arbitration after he was demoted.  (Dkt. #23 at ¶109).  The Sheriff is entitled, as a matter of state statute, to representation from members of the State's Attorney's Office.  Such statements and actions taken by his legally authorized representatives cannot form the basis for a constitutional conspiracy. Plaintiff complains about what he characterized as procedural abuse before the arbitrator (Dkt. #23 at ¶¶115-119) – but the arbitrator (and thereafter Illinois circuit court) has jurisdiction to enforce procedural rules of the arbitration. Plaintiff's allegations regarding his parallel arbitration proceeding do not have any

plausible jurisdictional relevancy in this Court, nor do they adequately support a conspiracy claim.

## Conclusion

Plaintiff spends the majority of his complaint alleging facts about a non-party, who was not prosecuted, following the analysis of legal rules that are not relevant. As to the allegations that do relate to his claim, Plaintiff admits that he was disciplined pursuant to internal LCSO rules – he does not have a First Amendment right endorse political candidates in his Sheriff's Office uniform. His complaint should be dismissed with prejudice.

Respectfully submitted,
ERIC F. RINEHART
State's Attorney of Lake County

Eric F. Rinehart
STATE'S ATTORNEY OF LAKE COUNTY
Melanie K. Nelson (#6288452)
Karen D. Fox (#6255941)
Assistant State's Attorney
18 N. County St., Waukegan, IL 60085
(847) 377-3099
mnelson@lakecountyil.gov
kfox@lakecountyil.gov

By: /s/Melanie K. Nelson
   Assistant State's Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed the foregoing **Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)** with the Clerk of the Court for the Northern District of Illinois by using the Electronic Case Filing System of the Court. The Electronic Case Filing System sent a "Notice of E-Filing" to the Attorneys of Record in this case, and no party is appearing pro se.

/s/Melanie K. Nelson
One of the Attorneys for Defendants

Eric F. Rinehart
STATE'S ATTORNEY OF LAKE COUNTY
Melanie K. Nelson (#6288452)
Karen D. Fox (#6255941)
Assistant State's Attorney
18 N. County St., Waukegan, IL 60085
(847) 377-3099
mnelson@lakecountyil.gov
kfox@lakecountyil.gov